UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AKSHAR 6, L.L.C., ET AL. | CIVIL ACTION NO. 09-1942 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before this Court is an Appeal of Magistrate Judge Decision [Record Document 62] filed on behalf of Defendant Travelers Property Casualty Company of America ("Travelers"). Travelers claims the Magistrate Judge's June 10, 2010 Memorandum Ruling granting Plaintiffs' Motion to Remand and denying Travelers' Motion to Sever [Record Document 60] was clearly erroneous and/or contrary to law and should be overruled in accordance with Rule 72 of the Federal Rules of Civil Procedure. [Record Document 62]. For the reasons stated herein, the Magistrate Judge's Memorandum Ruling [Record Document 60] and Order of Remand [Record Document 61] are **AFFIRMED.**

**FACTUAL BACKGROUND**

In 2006, Plaintiffs entered into a contract for the construction of a Hilton Garden Inn ("the Hotel") in Shreveport, Louisiana. [Petition ¶ 8]. The Hotel is a four-story building with 142 guest rooms and additional facilities including meeting rooms, lounge, dining facility, kitchen, maintenance rooms, lobby, exercise room, pool, laundry rooms, and elevators. Id. at ¶ 5. The contract specifications for the Hotel required it to be constructed using dry gypsum board ("sheetrock") for the interior walls that was to be sealed with anti-mildew sealer and then, once thoroughly dry, covered with a vinyl wall covering by using fungi

resistant and waterproof adhesive.[1]  Id. at ¶ 9.  The contract also required that the guest rooms be climate controlled by a Package Terminal Air Conditioner ("PTAC") and that the halls and remainder of the Hotel be heated, cooled and ventilated by a designed HVAC system.  Id. at ¶ 10.

According to Plaintiffs, after the Hotel opened and began receiving guests, Plaintiffs learned that the sheetrock "had been stored outside and subjected to inclement weather," that the sheetrock "had been subjected to inclement weather after its installation on the wall studs and before placement of the vinyl wall covering," and that the sheetrock "was not coated with the required sealer nor was the vinyl wall covering installed with the requisite glue."  Id. at ¶¶ 26-28.  Plaintiffs allege the sheetrock "must be removed as its structural integrity and useful life have been compromised" and that the vinyl wall-covering must be replaced.  Id. at ¶ 34.  In addition, Plaintiffs allege "the HVAC system for the interior corridors of the Hotel was not operating because [the subcontractor] refused to connect the electrical system to it in an effort to use a prohibited extra-contractual remedy to force the [Plaintiffs] to pay an amount [the subcontractor] claimed it was owed."  Id. at ¶ 31.  As a result of the HVAC system not being operational and thus unable to control the overall air environment of the Hotel, moisture accumulated in the guest rooms and the remaining rooms of the Hotel causing the growth of mold and/or mildew.  [First Amended and Supplemental Petition ¶ VII].

On October 14, 2009, Plaintiffs, three Arkansas limited liability companies, filed suit in the First Judicial District Court, Caddo Parish, Louisiana, against twenty-two (22)

---

[1] Alternatively, the contract provided that the sheetrock be textured and painted. [Petition ¶ 9].

defendants,[2] including Travelers Property Casualty Company of America ("Travelers").[3] See Petition. Plaintiffs' specifically allege that Travelers is liable "as the insurer of the Hotel under a general liability policy issued to the [Plaintiffs] and in effect when the Sheetrock Defects and Mold and Mildew Problems occurred." [Petition ¶ 42]. Plaintiffs pray for an award of damages as well as an award of attorneys fees based on Travelers' arbitrary and capricious denial of their claim. Id. at ¶¶ 44-45.

Travelers removed the case on an assertion of diversity of citizenship between the Plaintiffs and Travelers, a citizen of Connecticut. [Record Document 1-1]. In its Notice of Removal, Travelers acknowledges complete diversity is lacking between Plaintiffs and several of the other named defendants but claims their citizenship should be ignored because "the Plaintiffs' Claims against Travelers . . . are fraudulently and improperly joined with Plaintiffs' claims against the other defendants named in the petition." Id. at ¶ 3. Immediately upon removal, Travelers also filed a motion to sever Plaintiffs' claims against Travelers from Plaintiffs' claims against the other named defendants on the basis that those claims "are based on entirely different legal theories, are improperly joined, involve different factual and legal issues, and can be more efficiently adjudicated in separate cases." [Record Document 2].

Plaintiffs timely filed a motion to remand challenging the improper joinder plea and praying for remand on the following grounds: (1) the statutory bar against removal in

---

[2]Plaintiffs assert claims against the general contractor, several subcontractors, architect, engineers, and their various insurers. See Petition.

[3]Plaintiffs' Petition incorrectly named "Travelers Casualty and Surety Company of America." See Petition ¶ 1(a).

diversity cases is applicable because at least two of the defendants are Louisiana residents; (2) complete diversity of citizenship is lacking because one of the defendant's is a citizen of Arkansas; and (3) the rule of unanimity was violated because Travelers did not obtain the consent of the other named defendants. See Record Document 24.

On June 10, 2010, upon consideration of Plaintiffs' Motion to Remand [Record Document 24] and Travelers' opposition thereto [Record Document 43], the Magistrate Judge rejected Travelers' argument of improper or fraudulent joinder and issued a Memorandum Ruling granting Plaintiffs' Motion to Remand and denying Travelers' Motion to Sever. See Record Document 60. Travelers appeals this ruling and submits that the Magistrate Judge's ruling "was clearly erroneous and contrary to law." [Record Document 62, p.1]. Specifically, Travelers asserts the Magistrate Judge applied the incorrect standard in determining whether the claims against Travelers were improperly joined. Id. at p.2.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(A), a Magistrate Judge is prohibited from conclusively deciding certain pretrial matters pending before the court (matters often referred to as the "excepted motions"). However, those matters not listed as an "excepted motion" under § 636(b)(1)(A), such as motions to remand, may be conclusively decided by a Magistrate Judge. Accordingly, in this matter, the Magistrate Judge's June 10, 2010 Memorandum Ruling is not to be construed merely as a recommendation to the district court; rather, it is an order on a non-dispositive matter that must be upheld unless it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72.

**LAW AND ANALYSIS**

The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Subsection (b) specifies that suits arising under federal law are removable "without regard to the citizenship or residence of the parties", while all other actions are removable "only if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis supplied).

The removing defendants bear the burden of demonstrating that federal jurisdiction exists and that removal was proper. Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1992) (citing B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981)). Traditionally, in order to demonstrate that a resident defendant was improperly joined, the removing defendants must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 532 (5th Cir. 2006), cert. denied, 548 U.S. 907, 126 S.Ct. 2945, 165 L.Ed.2d 956 (2006), (quoting Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)). Here, however, Travelers relies on the "fraudulent joinder" or "procedural misjoinder" theory first enunciated by the Eleventh Circuit. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). In Tapscott, the Eleventh Circuit recognized that joinder of defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure may be "fraudulent" where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or

alternative liability, and when the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.[4]  Id. at 1360. The Eleventh Circuit was careful to limit its holding and cautioned that only "egregious" misjoinder, rather than "mere misjoinder," will constitute fraudulent joinder. Id. at 1360.

The Fifth Circuit has not expressly adopted Tapscott's theory of fraudulent misjoinder but has indicated it might do so in an appropriate case. See Crockett, 436 F.3d at 532-33; In re Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002); In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002). For purposes of this motion, and recognizing most district courts within this circuit have taken the position that the Fifth Circuit has at least implicitly adopted Tapscott, the Court will assume the Tapscott analysis is controlling.

The Tapscott analysis for fraudulent misjoinder has two parts: first, the court must determine whether joinder is appropriate under the relevant joinder rule and the facts of the case; second, the court must determine whether the misjoinder was so egregious as to warrant a finding of fraudulent misjoinder. See Tapscott, 77 F.3d at 1360. Travelers objects to the Magistrate Judge's Memorandum Ruling as "clearly erroneous and/or contrary to law" because the Magistrate Judge "improperly conflated the 2-part Tapscott analysis and simply concluded that the two sets of claims were not fraudulently misjoined because any improper joinder was not 'egregious.'" [Record Document 62, p.2]. But

---

[4]Rule 20 permits defendants to be joined in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

contrary to Travelers' assertion that the Magistrate Judge simply "accepted Plaintiffs bald allegations that joinder was proper," the Magistrate Judge examined both the state and federal joinder rules and determined that joinder was proper because "all of the claims in this lawsuit arise from the same factual circumstances, and there will be significant factual and legal overlap in all of the claims."[5] [Record Document 60, p.6]. The Magistrate Judge then concluded that *even if* there had been a misjoinder, "it was 'mere misjoinder' and not the egregious brand of misjoinder required to trigger the [fraudulent misjoinder] doctrine." Id. at p.7. The Court agrees.

In Tapscott, the Eleventh Circuit held "fraudulent misjoinder" or "procedural misjoinder" occurs when the disjoined parties and claims are "wholly distinct" and "have no real connection" to each other, such that their joinder is "bordering on a sham." 77 F.3d at 1360 ("A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'") (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921)). Other courts have held that misjoinder is not "egregious" unless "the connection between the claims against the individual parties is so tenuous that disregarding the citizenship of the joined parties is just," or "when there is no 'palpable connection' between the claims and

---

[5] Travelers objects to the nomenclature used by the Magistrate Judge and suggests the Magistrate Judge substituted a lower standard than that required by Rule 20. See Record Document 65. Once again, however, Travelers misconstrues the Magistrate Judge's Memorandum Ruling, which carefully evaluated the joinder of Plaintiffs' claims against Travelers with the Plaintiffs' claims against the remaining defendants under both Article 463 of the Louisiana Code of Civil Procedure and Rule 20 of the Federal Rules of Civil Procedure. See Record Document 60. The fact that Magistrate Judge Hornsby chose to paraphrase rather than recite the exact language contained within Rule 20 in his conclusion is neither relevant nor does it persuade the Court that the Magistrate Judge's decision is "clearly erroneous" or "contrary to law."

the parties joined." Lundquist v. J&J Exterminating, Inc., 2008 WL 1968339 (W.D.La. May 2, 2008); see also, Texas Instruments Inc. v. Citigroup Global Markets, Inc., 266 F.R.D. 143 (N.D. Tex. 2010) (and cases cited therein).

In the instant case, all of the claims asserted by Plaintiffs arise out of the same factual circumstances and their claim for damages is for the overall damages to the Hotel resulting from the Sheetrock Defects and Mold and Mildew Problems. While there may be distinct legal issues involved, as some defendants may be liable in tort and others in contract, there are significant common factual and legal issues that must be decided with respect to all claims against all defendants. Compare Tapscott, 77 F.3d 1353 (claims against twenty-two named defendants for state law violations arising from sales of service contracts on *automobiles* had "no real connection" to claim against three additional defendants for state law violations arising from sales of extended service contracts for *retail products*); Accardo v. Lafayette Ins. Co., 2007 WL 325368 (E.D.La. Jan. 30, 2007) (where eighteen individual homeowners sued various insurance companies for breach of contract and bad faith after suffering damage to their homes as a consequence of Hurricane Katrina and/or Hurricane Rita, the district court determined each plaintiff was uniquely situated and that the lawsuit was most properly viewed as eighteen separate actions, each with its own particular facts). Plaintiffs' decision to join their claims against Travelers with their claims against the remaining defendants is not only permissible under Rule 20 but is also—arguably—the most reasonable manner by which to proceed as it will promote judicial economy, avoid piecemeal litigation, and reduce the potential for inconsistent judgments. See Lundquist, 2008 WL 1968339; Schwartz v. Chubb & Sons, Inc., 2006 WL 980673 (E.D.La. Apr. 11, 2006); Radlauer v. Great Northern Ins. Co., 2006 WL 1560791

(E.D.La. May 16, 2006); Bright v. No Cuts, Inc., 2003 WL 22434232 (E.D.La. Oct. 27, 2003); for detailed discussion of recent decisions applying the Tapscott analysis, see Texas Instruments, 266 F.R.D. 143.

## CONCLUSION

Accordingly, finding the Magistrate Judge's June 10, 2010 Memorandum Ruling was neither "clearly erroneous" nor "contrary to law,"

**IT IS ORDERED** that the Magistrate Judge's June 10, 2010 Memorandum Ruling [Record Document 60] be and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that this action be **REMANDED** to the First Judicial District Court, Caddo Parish, Louisiana.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 29th day of July, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE